Hearing Date: July 14, 2020 at 10:00 a.m.
Objection Deadline: July 7, 2020 at 5:00 p.m.

**TARTER KRINSKY & DROGIN LLP**
*Counsel to Deborah J. Piazza, as Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Deborah J. Piazza, Esq.
Robert A. Wolf, Esq.
Michael Brownstein, Esq.
smarkowitz@tarterkrinsky.com
dpiazza@tarterkrinsky.com
rwolf@tarterrkinsky.com
mbrownstein@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**In re:**

                                                        **Chapter 7**

**de GRISOGONO, U.S.A. INC.,**

                                                        **Case No. 20-10389 (SMB)**

                          **Debtor.**
------------------------------------------------------------x

**NOTICE OF TRUSTEE'S MOTION FOR AUTHORITY TO SELL BY PRIVATE SALE**
**TO SURYA CAPITAL LLC CERTAIN INVENTORY OF THE DEBTOR FREE AND**
**CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that upon her motion dated June 18, 2020 (the "**Sale**

**Motion**"), Deborah J. Piazza, as Chapter 7 trustee (the "**Trustee**") of the debtor in the above-

captioned case, de Grisogono U.S.A. Inc. (the "**Debtor**"), by her undersigned counsel, Tarter

Krinsky & Drogin LLP, will move before the Honorable Stuart M. Bernstein, at the United

States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York,

New York (at a telephonic hearing) **on July 14, 2020 at 10:00 a.m.** (the "Hearing"), or as soon

thereafter as counsel can be heard, for an order authorizing the Trustee to sell to Surya Capital

LLC ("**Surya Capital**"), free and clear of all liens, claims, and encumbrances, certain inventory of the Debtor, comprised of various jewelry items and timepieces, for the purchase price of $480,000.00, in accordance with the terms of the Asset Purchase Agreement between the Trustee and Surya Capital annexed to the Sale Motion as Exhibit 1.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the Sale Motion:

(1)    shall be set forth in a writing describing the basis therefor, and conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York; and

(2)    shall be filed and served as follows, so as to be received no later than **July 7, 2020 at 5:00 p.m.**:

(i)    shall be filed with the United States Bankruptcy Court for the Southern District of New York (a) in accordance with General Order M-399, electronically, by registered users of the Bankruptcy Court's case filing system, or (b) in accordance with Local Bankruptcy Rules 5005-1 and 9004-1, submitted to the Clerk of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004; and

(ii)    shall be served upon: (a) Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018 (Attn: Robert A. Wolf, Esq.), counsel to Deborah J. Piazza, as Chapter 7 Trustee; (b) Debtor's counsel, Golenbock, Eiseman, Assor, Bell & Peskoe, LLP, 711 Third Avenue, 17th Floor, New York, NY 10017 (Attn: Jonathan L. Flaxer, Esq.); and (c) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Richard C. Morrisey, Esq.).

**PLEASE TAKE FURTHER NOTICE** that the Hearing before Judge Bernstein will be held telephonically via Court Solutions. Participants may sign up or register at www.court-

solutions.com. The Hearing may be adjourned, from time to time, by announcement in open

Court without any further or other notice thereof.

Dated:   New York, New York
         June 18, 2020

                                    **TARTER KRINSKY & DROGIN LLP**
                                    *Attorneys for Deborah J. Piazza,*
                                    *the Chapter 7 Trustee*

                                    By:____/s/ Robert A. Wolf_____
                                         Scott S. Markowitz, Esq.
                                         Deborah J. Piazza, Esq.
                                         Robert A. Wolf, Esq.
                                         Michael Brownstein, Esq.
                                         1350 Broadway, 11th Floor
                                         New York, New York 10018
                                         (212) 216-8000
                                         smarkowitz@tarterkrinsky.com
                                         dpiazza@tarterkrinsky.com
                                         rwolf@tarterkrinsky.com
                                         mbrownstein@tarterkrinsky.com

**TARTER KRINSKY & DROGIN LLP**
*Counsel to Deborah J. Piazza, as Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Deborah J. Piazza, Esq.
Robert A. Wolf, Esq.
Michael Brownstein, Esq.
smarkowitz@tarterkrinsky.com
dpiazza@tarterkrinsky.com
rwolf@tarterrkinsky.com
mbrownstein@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**In re:**

**de GRISOGONO, U.S.A. INC.,**

                            **Debtor.**
-----------------------------------------------------------x

**Chapter 7**

**Case No. 20-10389 (SMB)**

**TRUSTEE'S MOTION FOR AUTHORITY TO SELL BY PRIVATE SALE TO SURYA
CAPITAL LLC CERTAIN INVENTORY OF THE DEBTOR FREE AND
CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

**TO:    THE HONORABLE STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

Deborah J. Piazza, as chapter 7 trustee (the "**Trustee**") of de Grisogono U.S.A. Inc. (the

"**Debtor**"), by her undersigned counsel, hereby submits this motion (the "**Sale Motion**")

pursuant to §§105(a) and 363 of Title 11 of the United States Code, §§101-1532, as amended

(the "**Bankruptcy Code**") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"),  for an order authorizing the Trustee to sell, free and clear

of all liens, claims, and encumbrances, certain inventory of the Debtor, comprised of various

jewelry items and timepieces (the "**Assets**"), to Surya Capital LLC ("**Surya Capital**") for the

purchase price of $480,000.00, and for such other and further relief as the Court may deem just and proper.  In support of the Sale Motion, the Trustee represents as follows:

## PRELIMINARY STATEMENT

1.      The Assets to be sold under the Asset Purchase Agreement (the "**Sale Agreement**") between the Trustee and Surya Capital (a copy of which is annexed hereto as **Exhibit 1**), are comprised of: (a) 141 items of jewelry and timepieces which the Trustee caused to be removed from the Debtor's leased premises and to be stored with Brinks Global Services, a Division of Brinks, Inc. **("Brinks")** for safekeeping (a list of which items is annexed to the Sale Agreement as **Exhibit A**) ; and (b) approximately 55  jewelry and timepiece items (a list of which items is annexed to the Sale Agreement as **Exhibit B**) previously consigned by the Debtor to the department store chain Saks Incorporated ("**Saks**"), and as per information received from Saks, are located at various Saks stores in the United States and Canada.

2.       In granting the Trustee's prior motion for relief pursuant to Section 721 of the Bankruptcy Code, this Court entered an Order on March 19, 2020 which granted the Trustee the following authority:

> **ORDERED**, that the Motion is granted and the Trustee is hereby authorized to operate the Debtor's business and sell the Debtor's Jewelry Inventory subject to the Trustee's best business judgment either through (i) MYC, who will be marketing and selling the Jewelry Inventory in the Trustee's possession stored, on her behalf, at Brinks or (ii) the Retailers who have possession of the Jewelry Inventory on consignment from the Debtor, on a case by case basis by private sale, with or without competitive bidding for a six month period of time, without prejudice to seeking further extensions, in all cases, for not less than the Debtor's cost to the extent ascertainable, subject to the Trustee's best business judgment…

3.      As will be set forth below and in the accompanying Declaration of Victor Moneypenny (the "**Moneypenny Declaration**," a copy of which is annexed hereto as **Exhibit**

2), a shareholder of MYC & Associates, Inc. ("**MYC**"), the Trustee's Court-approved Special Liquidator and Custodian, the onset of the coronavirus pandemic, with the attendant shutdown of non-essential and other normal business operations, has inhibited the Trustee's and MYC's ability to arrange for many in-person inspections of the Assets by prospective purchasers and to thereby solicit purchase offers from a wide array of such parties. Accordingly, at the Trustee's direction, MYC proceeded to contact various jewelry wholesalers and received competing bids from several, as a result of which the highest bid was that of Surya Capital, the $480,000.00 amount that is set forth as the purchase price in the Sale Agreement.

4.    The Trustee respectfully submits that given the present economic circumstances of the pandemic, during which the value of the Assets is undoubtedly decreasing significantly, coupled with the facts that the estate is bearing recurring storage fees and insurance premiums for the inventory stored at Brinks, and that Surya Capital, not the Trustee, is responsible for procuring possession of the consigned inventory located at the various Saks locations, the Trustee's sale of the Assets to Surya Capital for $480,000.00 represents a prudent and reasonable exercise of the Trustee's business judgment that will be beneficial to the Debtor's estate and its creditors.

## JURISDICTION, VENUE AND STATUTORY BASES FOR RELIEF

5.    This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§157 and 1334, and the order of reference of the District Court. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).   Venue of this proceeding and of this Sale Motion in this District is proper under 28 U.S.C. §§1408 and 1409.  The statutory bases for relief are Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

## BACKGROUND

6.      On February 10, 2020, the Debtor filed in this Court a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

7.       Shortly thereafter, Deborah J. Piazza was appointed as interim chapter 7 trustee of the estate. .She subsequently became permanent Trustee pursuant to Section 702(d) of the Bankruptcy Code and by operation of law and is currently acting in such capacity.

8.      From approximately March 2017 through the end of January 2020, the Debtor operated a retail jewelry store at 698-700 Madison Avenue, New York, New York (the "**Premises**").  The Debtor was known for its high-end jewelry and the unique design and quality of its products.  The Trustee, with the help of MYC, vacated the Premises, removing the jewelry inventory located thereat and relocating the same to Brinks at 580 Fifth Avenue, New York, New York 10036, for safekeeping.[1]  Brinks has obtained insurance on that inventory.

9.      As stated above, the jewelry inventory presently stored at Brinks consists of 141 items, which are listed on **Exhibit A** to the Sale Agreement and comprise a portion of the Assets being sold pursuant thereto.  The other portion of the Assets are the items consigned to Saks which, as Saks has informed the Trustee, are located at various Saks store locations in the United States and in Canada.[2]

### THE TRUSTEE SHOULD BE GRANTED AUTHORITY TO CONSUMMATE A PRIVATE SALE OF THE ASSETS TO SURYA CAPITAL

10.      The Trustee has a statutory duty to promptly liquidate the Debtor's Assets, and the Trustee was granted broad discretion by this Court's aforementioned March 19, 2020 Order

---

[1]  The sublease for the Premises has been rejected pursuant to an Order of this Court dated February 28, 2020 and possession of the Premises was turned over to the Debtor's sublandlord.
[2] The Debtor previously consigned other items of jewelry to other department stores and jewelry stores.  Those items are a not a subject of the instant Sale Motion.

as to the manner in which to market and sell the estate's jewelry inventory. In accordance with that Order, it was the Trustee's original intent to have MYC market and sell the Assets through a private sale or sales after affording all interested parties an opportunity to view in person the Assets stored at Brinks. Unfortunately, the onset of the pandemic crisis, and the resultant shutdown of non-essential and other normal business operations and the governmental imposition of stay-at-home orders, significantly limited the number of prospective purchasers willing to make in-person inspections, and thus substantially limited the number of parties prepared to make purchase offers.[3]

11.      Accordingly, as set forth in the accompanying Moneypenny Declaration, with the Trustee's consent, MYC focused its ensuing marketing efforts on directly contacting various jewelry wholesalers who purchase the type of fine jewelry and timepiece items contained in the inventory.  Pursuant to those efforts, MYC showed the inventory at Brinks in-person to five (5) separate parties, three (3) of whom submitted purchase offers.  Two (2) of those three (3) offers were for a package comprised of the entirety of the Assets, both those stored at Brinks and those consigned to Saks, and the other offer was solely for the inventory stored at Brinks.   MYC then had each of those three (3) offerors bid against each other, which resulted in Surya Capital making the highest offer, $480,000.00, for a package consisting of both the 141 jewelry and timepiece items stored at Brinks, and the approximate 55 items consigned by the Debtor to Saks.

12.      Thus, in the exercise of her business judgment after consultation with MYC, the Trustee has determined that, given the very substantial and ongoing obstacles to marketing and

---

[3]      As set forth in the Moneypenny Declaration, MYC already had prepared a sale catalog that was distributed to a number of parties whom MYC deemed would be interested in the inventory, including jewelry buyers that MYC had dealt with in previous cases.  In addition, MYC posted the itemized list and photos of the inventory stored at Brinks on MYC's webpage set up for this case, and sent an email to the approximate 3,500 subscribers to the MYC database, notifying said subscribers that the Assets were available for sale and directing them to said webpage.

selling the Assets in the middle of the pandemic crisis which to date does not have a determinable end, the most economically prudent way at this juncture to maximize proceeds of a sale for the benefit of the estate, and concomitantly terminate the estate's obligations to pay storage fees and insurance premiums, is for the Trustee to proceed with a private sale of the Assets to Surya Capital for a purchase price of $480,000.00 pursuant to the terms of the Sale Agreement.

13.    In addition to the Sale Agreement's itemized listing of the Assets in **Exhibits A and B** thereto, the Sale Agreement contains the following terms:

- **Purchase Price:**  $480,000.00, $48,000.00 of which already has been deposited with the Trustee as the requisite ten per cent (10%) down payment.  The balance of $432,00.00 shall be paid at closing.

- **"As Is, Where Is":**  The Assets are being sold "**AS IS, WHERE IS, AND WITH ALL FAULTS**" with respect to all facts, circumstances, conditions and defects and specifically and expressly without any warranties, representations or guarantees, either expressed or implied, of any kind, nature, or type whatsoever from or on behalf of the Trustee, and without recourse of any kind against Seller.

- **Subject to Bankruptcy Court Order:**  Closing of the sale of the Assets is subject to the entry of an Order of this Court approving the Sale Agreement and authorizing consummation of the sale transaction (a "**Sale Order**").

- **Closing:**  Closing of the sale of the Assets (the "**Closing**") shall take place within fourteen (14) days of the earlier of the following dates:  (i) the date of entry of the Sale Order, if said Order includes a provision granting Surya Capital "good faith" status under Section 363(m) of the Bankruptcy Code; or (ii) the date as of which the Sale Order is not appealable.  The Trustee shall deliver a Bill of Sale of the Assets to Surya Capital at closing.

- **Assets at Saks:**  Surya Capital has agreed that it shall be solely responsible for procuring possession from Saks and/or any of Saks' parent companies, affiliates, officers, directors, employees, agents and/or representatives of the portion of the Assets consigned to Saks and itemized on **Exhibit B**, irrespective of where those items are located.  The Trustee makes no representations, warranties or

guarantees, either expressed or implied, of any kind, nature or type as to the present location or condition of any of the Assets listed on **Exhibit B.**

## SALE OF THE ASSETS VIA A PRIVATE SALE IS WARRANTED

14.    Section 363(b)(1) of the Bankruptcy Code provides that:

> "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

15.    A private sale of a bankruptcy estate's assets is specifically authorized under the Bankruptcy Code and the Bankruptcy Rules. Bankruptcy Rule 6004(f)  provides that :

> "all sales not in ordinary course of business may be by private sale or public auction."

It is within the discretion of the court to determine whether to approve or disapprove of a method for the disposition of property. In re Alves, 52 B.R. 353 (Bankr. D.R.I. 1985; *see,* generally, In re Stogsdill, 102 B.R. 587 (Bankr. W.D. Tex. 1989).

16.    The Trustee submits that a private sale of the Assets to Surya Capital is reasonable under the present economic realities attendant to the pandemic crisis. As set forth above and in the accompanying Moneypenny Declaration, MYC has actively solicited sale offers, and of the offers received from three (3) competing bidders, the $480,000.00 amount of Surya Capital's offer was the highest.  The sale, coupled with the funds previously collected by the Trustee on behalf of the estate, will enable the Trustee to make a meaningful distribution to creditors.

**As There Are No Known Liens Affecting the Assets, the Proposed Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear of Liens, Claims and Encumbrances**

17.    Bankruptcy Code Section 363(f) provides that a trustee may sell property free and clear of liens, claims and encumbrances, with any such liens, claims and encumbrances attaching

to the net proceeds of sale, if any one of the following conditions is satisfied:

- applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

- the lien holder or claimholder consents;

- such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

- such interest is in bona fide dispute; or

- the lien holder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

See 11 U.S.C. § 363(f).

18.     The bar date of May 18, 2020 for the filing of claims against the Debtor's estate has passed, and the only claim on the Claims Register listed as secured is that of Bergdorf Goodman, Inc. ("**Bergdorf**") in the amount of $154,450.00, asserted as a setoff against a significantly larger claim which the estate holds against Bergdorf.  In any event, Bergdorf's allegedly secured claim does not appear to relate to any of the subject Assets and, in any event,  is substantially less in amount than the $480,000.00 purchase price under the Sale Agreement.   Accordingly, pursuant to Section 363(f), the sale of the Assets to Surya Capital should be free and clear of liens, claims and encumbrances, with any such to attach to the proceeds of the sale.

**Surya Capital is Entitled to the Protections of Bankruptcy Code Section 363(m); The 14-Day Stay Under Bankruptcy Rule 6004(h) Should Be Waived**

19.     Section 363(m) of the Bankruptcy Code provides certain protections to good faith purchasers. That statutory provision states, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. §363(m).

20.    While the Bankruptcy Code does not define "good faith," it has been held that:

> [g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings. . . A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or any attempt to take grossly unfair advantage of other bidders.'

Licensing by Paola v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997) (citations omitted).

21.    The Trustee respectfully submits that no facts exist here that would preclude Surya Capital from obtaining Section 363(m) protections. The Trustee submits Surya Capital has agreed to purchase the Assets in good faith, and the Sale Agreement is the result of an arm's length transaction between the Trustee, respecting which the Trustee and Surya Capital will have at all times acted in good faith under applicable legal standards.   Accordingly, the Trustee requests the Court make a finding that Surya Capital is entitled to the protections of Section 363(m) of the Bankruptcy Code.

22.    Furthermore, the Trustee respectfully requests that the Court, in approving the sale of the Assets to Surya Capital, waive the 14-day stay of its sale order set forth in Bankruptcy Rule 6004(h).  Said Bankruptcy Rule states that "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, **unless the court orders otherwise**" [emphasis added].

23.    Given, as set forth above, that Surya Capital should be accorded the protections of Section 363(m) of the Bankruptcy Code, coupled with the fact that the estate is bearing the cost of storage fees and insurance premiums for the inventory located at Brinks until the Trustee's sale of the Assets to Surya Capital is consummated, the Trustee respectfully requests that the Court waive Bankruptcy Rule 6004(h)'s 14-day stay requirement in an order approving the sale.

## NOTICE

24.    Concurrently with the filing of the Sale Motion papers, the Trustee is serving same upon each of the parties who were served with the previous Trustee's Motion for an Order Authorizing the Trustee to Operate Debtor's Business on a Limited Basis and for a Limited Period of Time to Liquidate the Debtor's Jewelry Inventory [Doc. No. 25 on the Court's electronic docket for this case], including, without limitation.: (a) the Debtor's counsel; (b) the United States Trustee; (c) all parties that have filed requests for service in this case; and (d) all creditors and parties in interest, including the parent company and affiliates of the Debtor.

WHEREFORE the Trustee respectfully requests entry of an order, substantially in the form annexed hereto as **Exhibit 3**, authorizing the Trustee to consummate a private sale of the Assets to Surya Capital in accordance with the terms of the Sale Agreement annexed hereto as **Exhibit 1**, and granting the additional relief requested in the instant Sale Motion, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
        June 18, 2020

TARTER KRINSKY & DROGIN LLP
*Attorneys for Deborah J. Piazza,
the Chapter 7 Trustee*

By:  /s/ Robert A. Wolf
        Scott S. Markowitz, Esq.
        Deborah J. Piazza, Esq.
        Robert A. Wolf, Esq.
        Michael Brownstein, Esq.
        1350 Broadway, 11th Floor
        New York, New York 10018
        (212) 216-8000
        smarkowitz@tarterkrinsky.com
        dpiazza@tarterkrinsky.com
        rwolf@tarterkrinsky.com
        mbrownstein@tarterkrinsky.com

**EXHIBIT 1**

## ASSET PURCHASE AGREEMENT

**SELLER**:   Deborah J. Piazza, as Chapter 7 Trustee of de Grisogono U.S.A. Inc.("**Debtor**"), having an office address of c/o Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018.

**PURCHASER:**   Surya Capital LLC, a Delaware limited liability company, having an office address of 608 Fifth Avenue, Suite 901, New York, New York  10020.

**ASSETS BEING SOLD:**  Watch and jewelry items  listed on **Exhibits A and B** attached hereto (collectively, the "**Assets**").

**PURCHASE PRICE:**   $480,000.00, $48,000.00 of which shall be paid upon execution of this Agreement, and the $432,000.00 balance of which will be paid at closing.   Payments shall be made payable to order of "Deborah J. Piazza, as Chapter 7 Trustee," and shall be by cash, bank check or wire transfer (as per wire instructions to be provided to Purchaser).

**AS IS, WHERE IS:**   The Assets are being sold "**AS IS, WHERE IS, AND WITH ALL FAULTS**" with respect to all facts, circumstances, conditions and defects and specifically and expressly without any warranties, representations or guarantees, either expressed or implied, of any kind, nature, or type whatsoever from or on behalf of Seller, and without recourse of any kind against Seller..

**SUBECT TO BANKRUPTCY COURT ORDER**:  Closing of this transaction is subject to the entry of an Order by the United States Bankruptcy Court for the Southern District of New York in the Debtor's bankruptcy case approving this Agreement for Seller's sale of the Assets to Purchaser (the "**Sale Order**").

**CLOSING:**  Closing of the sale of the Assets (the "**Closing**") shall take place within fourteen (14) days of the earlier of the following dates:   (i) the date of entry of the Sale Order, if said Order includes a provision granting Purchaser "good faith" status under Section 363(m) of the United States Bankruptcy Code; or (ii) the date as of which the Sale Order is not appealable. Seller shall deliver a Bill of Sale of the Assets to Purchaser at closing.

**ASSETS AT SAKS:**  Purchaser acknowledges that the Assets listed on **Exhibit B** are items that the Debtor previously consigned to Saks Incorporated ("**Saks**"). Purchaser agrees that it shall be solely responsible for procuring possession of said Assets on **Exhibit B** from Saks and/or any of Saks' parent companies, affiliates, officers, directors, employees, agents and/or representatives. The Trustee makes no representations, warranties or guarantees, either expressed or implied, of any kind, nature or type as to the present location or condition of any of the Assets listed on **Exhibit B. As per email received confirmation from Diana Schade of Saks Fifth Avenue.**

Dated: New York, New York

June 10, 2020

_____

Deborah J. Piazza, as Chapter 7 Trustee

of de Grisogono U.S.A. Inc.


SURYA CAPITAL LLC


By:_____

        Janak Dave

        Managing Partner

**EXHIBIT A**

| LOT | DESCRIPTION |
|-----|-------------|
| | **WATCHES** |
| 1 | Allegra S10, 18K Pink Gold, 44 White Diamonds |
| 2 | New Retro W N03, Polised Pink Gold Case, White Dial, Black Arabic Numerals, Dauphine Hands |
| 3 | New Retro N02/BA, Polished Pink Gold, Black Dial, White Arabic Numerals, Pink Hands, Alligator Strap |
| 4 | New Retro N06, Polished Pink Gold, Brown Dial, Arabic Numerals, Dauphine Hands, Leather Strap |
| 5 | Allegra S06/1B, 18K White Gold, Black MOP Dial, Leather Bracelet |
| 6 | New Retro RN02/B, Polished Steel, Blue Dial, Dauphine Hands |
| 7 | New Retro RN01, Polished Steel, Gray Dial, Dauphine Hands |
| 8 | New Retro RDM, White Gold Case w/12H Crown, Crystal Case Back, Skeleton Hand Wound Movement |
| 9 | Retro Tourbillon, Polished Pink Gold, Skeleton Tourbillon Movement, 5N Hands, Alligator Strap |
| 10 | New Retro W N02, Polished Pink Gold Case, Black Dial, White Arabic Numerals, Alligator Strap |
| 11 | Allegra 25 S01, Pink Gold Case w/ Diamonds, MOP Dial, 5N Dauphine Hands |
| 12 | Allegra 25 S04, White Gold Case w/ Diamonds, Rhodium Dauphine Hands, Blue Galuchat Bracelet |
| 13 | Otturatore N05, Satin Polished White Gold, Ruthenium Rotating Dial, Clou de Paris Décor |
| 14 | Tino S35 AT V3, Pink Gold, Set 36 White Diamonds, Dial 12 White Diamonds, Pink Gold |
| 15 | New Retro W G, Pink Gold Case w/ Diamonds, 12H Crown, White Opalin Flinque Dial, Arabic Numerals |
| 16 | Allegra S07/B, Set White Gold 18K, Black MOP Dial, Black Leather Bracelet |
| 17 | Allegra S09, White Gold 18K Set with 44 White Diamonds, 36 Pink Sapphires, White Dial |
| 18 | Occhio S02, Grey Gold, Matte Black Coating, 167 Black Diamonds 1.9ct |
| 19 | DG Watch S01, DLC Blackened Steel Case Set Black Diamonds, Pink Bezel w/ White Diamonds |
| 20 | Allegra S09, White Gold 18K Set with 44 White Diamonds, 36 Pink Sapphires, White Dial |
| 21 | Otturatore N05, Satin Polished White Gold, Ruthenium Rotating Dial, Clou de Paris Décor |
| 22 | New Retro N05 |
| | |

| LOT | DESCRIPTION |
|---|---|
| | **WATCHES CONTINUED** |
| 23 | Tondo By Night S08, Coral Pearly Fiberglass, 48 Spinels, Blackened Oscillating Weight, 60 Spinels |
| 24 | Tondo By Night S07, Blue Pearly Fiberglass, 48 Blue Sapphires, Blackened Oscillating Weight |
| 25 | Tondo By Night, Turquoise Fiberglass, 48 Amethysts, Blackened Oscillating Weight |
| 26 | Tondo By Night, Turquoise Fiberglass, 48 Amethysts, Blackened Oscillating Weight |
| 27 | Tondo By Night S11, Purple Fiberglass, 48 Spinels |
| 28 | Tondo By Night S13, Black Fiberglass, 48 Tsavorites, Blackened Oscillating Weight, 60 Tsavorites |
| 29 | Tondo By Night, Black Fiberglass, 48 Amethystes, Blackened Oscillating Weight, 60 Amethystes |
| 30 | Tondo By Night, Coral Pearly Fiberglass, 48 Spinels, Blackened Oscillating Weight, 60 Spinels |
| 31 | New Retro W N06, Polished Pink Gold Case, Brown Dial, Arabic Numerals, Dauphine Hands |
| 32 | Piccolina S17/B M, Case 18k Rose Gold, Full Set Brown Diamonds, Arabic Numerals |
| 33 | Tondo By Night, White Pearly Fiberglass, 48 White Diamonds, Blackened Oscillating Weight, 60 White |
| 34 | New Retro RN03/B, Polished Steel, ALD Nano Deco Vert Color Dial & Dauphine Hands |
| 35 | Tondo By Night S13, Black Fiberglass, 48 Tsavorites, Blackened Oscillating Weight, 60 Tsavorites |
| 36 | New Retro RN01/B, Polished Steel, Grey Dial, Dauphine Hands |
| 37 | Tondo By Night, Black Fibferglass, 48 Tsavorites, Blackened Oscillating Weight, 60 Tsavorites |
| 38 | Tondo By Night, Black Fiberglass, 48 Amethystes, Blackened Oscillating Weight, 60 Amethystes |
| 39 | New Retro N03, Polished Pink Gold, White Dial, Black Arabic Numerals, Pink Hands, Alligator Strap |
| 40 | Eccentrica S01, Full Set Pink Gold, White Diamonds, Full Set Dial w/ White Diamonds, Arabic Numerals |
| 41 | Tino S21 AT v2, Case 18K Pink Gold, Movement AT, Function Dual Time, Dial 18K PG |
| 42 | Grappoli S09, Pink Gold, Briolette Cut Opiates, Pink Sapphires, Snow Setting, Galuchat Strap |
| 43 | New Retro W G, White Gold Case w/ Diamonds, 12H Crown, Arabic Numerals, Dauphine Hands |
| 44 | Grappoli S03, Pink Gold, Briolette Cut Orange Sapphires, Snow Setting, Galuchat Strap |
| | |

| LOT | DESCRIPTION |
|-----|-------------|
| | **WATCHES CONTINUED** |
| 45 | Tondo By Night S08, Coral Pearly Fiberglass, 48 Spinels |
| | |
| | |
| | **NECKLACES** |
| 46 | Pink Gold 20 Gr, 2 White Diamonds .15ct, 2 Black Diamonds .05ct, 320 sapphires 4.95ct |
| 47 | Pink Gold 11.10 Gr, 79 Diamonds 1.10ct, Chain 38-40cm |
| 48 | Pink Gold 11.10 Gr, 79 Diamonds 1.10ct, Chain 38-40cm |
| 49 | White Gold 21 Gr, 50 Diamonds .80ct, 3 Blue Sappires 1.80ct, Chain 60cm |
| 50 | White Gold 21 Gr, 50 Diamonds .80ct, 3 Blue Sappires 1.80ct, Chain 60cm |
| 51 | White Gold 11.10 Gr, 40 Paraiba Tourmalines .70ct, 39 Diamonds .55ct |
| | |
| | |
| | **EARRINGS** |
| 52 | Pink Gold 27.10 Gr, 194 Fuschia Sapphires 20.80ct |
| 53 | White Gold 31.10 Gr, 114 Diamonds 2.60ct |
| 54 | Pink Gold 18.15 Gr, 2 Onyx 15.50ct (CUFFLINKS) |
| 55 | Pink Gold 17.80 Gr, 132 Diamonds 1.40ct, 2 Onyx 15.50ct (CUFFLINKS) |
| 56 | Pink Gold 29.10 Gr, 424 Diamonds 5.0ct |
| 57 | Pink Gold 29.10 Gr, 424 Diamonds 5.0ct |
| 58 | Pink Gold 36 Gr, 118 Diamonds 3.57ct |
| 59 | Pink Gold 27.10 Gr, 136 Diamonds 15.85ct, 58 White Diamonds 1.75ct |
| 60 | White Gold 31.10 Gr, 114 Diamonds 2.60ct |
| | |

| LOT | DESCRIPTION |
|-----|-------------|
| **EARRINGS CONTINUED** | |
| 61 | White Gold 29.10 Gr, 424 White Diamonds 5.0ct |
| 62 | White Gold 31 Gr, 150 Diamonds 1.90ct, 4 Onyx 11.30ct |
| 62A | Pink Gold 13.30 Gr, 56 White Diamonds 1.60ct |
| 63 | Pink Gold 45.45 Gr, 608 Diamonds 11.30ct |
| 64 | Pink Gold 45.45 Gr, 608 Diamonds 11.30ct |
| 65 | White Gold 7 Gr, 78 Diamonds 1.20ct, 96 Emeralds 1.30ct |
| 66 | White Gold 7.20 Gr, 78 Pastel Blue Sapphires 1.20ct, 96 Blue Sapphires 1.50ct |
| 67 | Pink Gold 7 Gr, 78 Pink Sapphires 1.15ct, 96 Amethysts 1.20ct |
| | |
| | |
| **BRACELETS** | |
| 68 | Pink Gold, Pink Diamonds |
| 69 | Pink Gold |
| 70 | White Gold 10.20 Gr, 33 Diamonds .20ct, 2 Turquoise Cabochon .60ct |
| 71 | Pink Gold, Pink Diamonds |
| 72 | Pink Gold, Pink Diamonds |
| 73 | Pink Gold, Pink Diamonds |
| 74 | Pink Gold, Pink Diamonds |
| 75 | Pink Gold, Pink Diamonds |
| 76 | Pink Gold, Pink Diamonds |
| 77 | Pink Gold, Pink Diamonds |
| 78 | White Gold 10.65 Gr, 33 Diamonds .20ct, 2 Onyx Cabochon |
| | |

| LOT | DESCRIPTION |
|-----|-------------|
| | **BRACELETS CONTINUED** |
| 79 | Pink Gold 10.20 Gr, 33 Diamonds .20ct, 2 Cacholong Cabochon .75ct |
| 80 | White Gold 10.20 Gr, 33 Diamonds .20ct, 2 Turquoise Cabochon .60ct |
| 81 | Leather Calf Cord |
| 82 | White Gold 9.50 Gr, 15 Blue Sapphires .30ct, Leather Calf Cord |
| 83 | Pink Gold 109.60 Gr, 371 White Diamonds, 13.60ct |
| 84 | Pink Gold 51.40 Gr, 103 White Diamonds 3.60ct |
| 85 | White Gold 109.60 Gr, 371 White Diamonds 13.60ct |
| 86 | White Gold 76.70 Gr, 98 White Diamonds 3.95ct |
| 87 | White Gold 76.70 Gr, 98 White Diamonds 3.95ct |
| 88 | White Gold 45.20 Gr, 263 White Diamonds 8.50ct |
| 89 | Pink Gold 47.70 Gr, 204 White Diamonds 7.10ct |
| | |
| | |
| | **RINGS** |
| 90 | White Gold 15.30 Gr, 3 Briolette Diamonds 1.50ct, 78 White Diamonds .85ct |
| 91 | White Gold 39.80 Gr, 224 White Diamonds 3.75ct |
| 92 | Pink Gold 23.50 Gr, 210 White Diamonds 5.44ct |
| 93 | Pink Gold 23.50 Gr, 210 White Diamonds 5.44ct |
| 94 | Pink Gold 26.60 Gr, 343 Diamonds 5.79ct, 158 Icy Diamonds 9.08ct |
| 95 | White Gold 21 Gr, White Ceramic 1 Gr, 72 Diamonds 1.75ct |
| 96 | Pink Gold 26 Gr, 79 Brown Diamonds 2.05ct |
| 97 | White Gold |
| | |

| LOT | DESCRIPTION |
|-----|-------------|
| | **RINGS CONTINUED** |
| 98 | Pink Gold 15.30 Gr, 78 Diamonds .85ct, 3 Briolette Pink Sapphires 1.50ct |
| 99 | Pink Gold 21 Gr, Black Ceramic 1 Gr, 72 Diamonds 1.75ct |
| 100 | Pink Gold 10.75 Gr, 123 Diamonds .40ct, 2 Cornaline Cabochon .30ct |
| 101 | White Gold |
| 102 | Pink Gold 23.50 Gr, 210 Brown Diamonds 5.44ct |
| 103 | White Gold 28.70 Gr, 27 White Diamonds 1.45ct |
| 104 | White Gold 31.90 Gr, 365 White Diamonds 10.05ct |
| 105 | Pink Gold 26 Gr, 79 Brown Diamonds 2.05ct |
| 106 | White Gold 21 Gr, Black Ceramic 1 Gr, 72 Diamonds 2.05ct |
| 107 | Pink Gold 23.50 Gr, 210 Brown Diamonds 5.44ct |
| 108 | White Gold 26.60 Gr, 343 White Diamonds 5.79ct, 158 Icy Diamonds 9.08ct |
| 109 | White Gold 26.60 Gr, 343 White Diamonds 5.79ct, 158 Icy Diamonds 9.08ct |
| 110 | White Gold 26.60 Gr, 343 White Diamonds 5.79ct, 158 Icy Diamonds 9.08ct |
| 111 | Pink Gold 26.60 Gr, 343 White Diamonds 5.79ct, 158 Icy Diamonds 9.08ct |
| 112 | Pink Gold 26.60 Gr, 343 White Diamonds 5.79ct, 158 Icy Diamonds 9.08ct |
| 113 | Pink Gold 20.30 Gr, 111 Pink Fuschia Sapphires 14.95ct |
| 114 | White Gold 21.50 Gr, 56 White Diamonds .60ct, 2 Onyx Cabochon 4.75ct |
| 115 | Pink Gold 21 Gr, Beige Ceramic 1 Gr, 72 Brown Diamonds 1.70ct |
| 116 | White Gold |
| | |
| | |
| | |
| | |

| LOT | DESCRIPTION |
|---|---|
| | **BERGDORF** |
| 117 | Black Diamond Bezel Watch with Stingray Band, Diamond Face |
| 118 | Blue Bracelet |
| 119 | White Gold 27 Gr, Black Ceramic, 174 White Diamonds 4.35ct |
| 120 | Black & White Diamond Necklace |
| 121 | Pink Gold |
| 122 | Pink Gold Earrings |
| 123 | Pink Leather Strap |
| | |
| | **MISC.** |
| 124 | Samsung Gear |
| 125 | Watch |
| 126 | Watch |
| 127 | Watch |
| 128 | Watch |
| 129 | Watch |
| 130 | Watch |
| 131 | Watch |
| 132 | Watch |
| 133 | White Gold 55.50 Gr, 1448 White Diamonds 33.50ct |
| 134 | Pink Gold 28.28 Gr, 2 Coral 69.564 cts, 256 Brown Diamonds 9.996ct, 246 Pink Sapphires 4.069ct |
| 135 | Pink Gold 55.50 Gr, 1448 White Diamonds 31.42ct |
| 136 | Pink Gold 27.10 Gr, 194 Pink Fuschia Sapphires 20.80ct |
| | |

| LOT | DESCRIPTION |
|---|---|
| | **MISC. CONTINUED** |
| 137 | Watch |
| 138 | 2 Pink Sapphires |
| 139 | 2 Pink Sapphire Earrings |
| 140 | Pink Gold 26 Gr, 79 White Diamonds 2.85ct |
| 141 | White Gold 15 Gr, 114 Pink Sapphires 3.60ct, 21 Pink Sapphires .85ct, 74 Peridots 2ct |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**EXHIBIT B**

# De Grisogono Consignment

| Dept | | SKN | | | Inv $ @R | Inv U |
|------|------|------|------|------|------|------|
| Total | | | | | $1,460,300 | 61 |
| 439 | 443923977439 | 23977439 | DIA RING | 54002/01 | $28,900 | 1 |
| 439 | 400866859727 | 86685972 | 1.72CTWHDIA3.6CTBLKDIA WH | 54002/23 | $24,500 | 1 |
| 439 | 400106116177 | 10611617 | PINKG21GR BRWND1.70CT RG | 54001/50 | $11,200 | 1 |
| 439 | 400975808821 | 97580882 | 18KWG TURQ AM TS EAR | 12112/46 | $13,800 | 1 |
| 439 | 400107228824 | 10722882 | 77 WHT D1.60CT RG | 54251/01 | $14,700 | 1 |
| 439 | 400977531888 | 97753188 | WG DIA 5.00CT SAPH CRYSTAL | ECCENTRICA S02 | $88,500 | 1 |
| 439 | 400109442488 | 10944248 | WG D4.70CT ER | 14071/01 | $39,900 | 1 |
| 439 | 400110533977 | 11053397 | WHITE GOLD RING | 55218/01 | $25,500 | 1 |
| 439 | 400111904325 | 11190432 | BRACELET | 44182/18 | $9,400 | 1 |
| 439 | 400111905117 | 11190511 | EARRINGS | 11151/17 | $37,300 | 1 |
| 439 | 400112719874 | 11271987 | 18KWD4.60CRG | 54252/01 | $28,600 | 1 |
| 439 | 400112720122 | 11272012 | 18KPD3.90CEAR | 14032/04 | $18,800 | 1 |
| 439 | 400876963490 | 87696349 | 18KRG5.44CTWHDIARING | 54002/04 | $57,800 | 2 |
| 439 | 400981737788 | 98173778 | BLACK CORD ALLEGRA | AP.4571X.CORDON/BLK | $460 | 2 |
| 439 | 400113150676 | 11315067 | LEATHERCORDSTEELDENIM | AP.4425X.CORDON.AC-D | $440 | 1 |
| 439 | 400113290150 | 11329015 | 18KWD1.25CRG | 54031/01 | $9,400 | 1 |
| 439 | 400114684262 | 11468426 | 18KPPSAPH2.70CTAMPENDNK | 91508/17 | $13,300 | 1 |
| 439 | 400950846589 | 95084658 | 18K WG 1.55C PENDANT | 90097/02 | $16,100 | 1 |
| 439 | 400117010143 | 11701014 | D.20CT WG DRP ER | 10208/41 | $21,200 | 1 |
| 439 | 400117010280 | 11701028 | D11.30CT WG ER | 14072/01 | $69,000 | 1 |
| 439 | 400884425904 | 88442590 | 18KWG4.65CTWHDIAMONDEARRI | 18401/01 | $30,200 | 1 |
| 439 | 400884425942 | 88442594 | 18KRGBOU12.1ICY1CTWHDRING | 59502/04 | $26,200 | 1 |
| 439 | 400884426406 | 88442640 | 18KWG3.25CTDIAMONDEARRING | 14051/01 | $63,900 | 3 |
| 439 | 400884426468 | 88442646 | 18KWG1.45CTDIARING | 58401/01 | $14,100 | 1 |
| 439 | 400884586285 | 88458628 | 18KWG 2.05CT79WHTDIA RNG | 54001/01 | $30,000 | 2 |
| 439 | 400989446118 | 98944611 | PG RUBY BABY GRAPPOLI WCH | BABY GRAPPOLI S04 | $77,600 | 1 |
| 439 | 400957852736 | 95785273 | YBRN 18KPG D6.20CTW SAP | TINO S17 AT | $74,300 | 1 |
| 439 | 400991794702 | 99179470 | WG MOP 3.10CTS | ECCENTRICA S06 | $58,800 | 1 |
| 439 | 400121543507 | 12154350 | PLSHD STL WTCH | NEW RETRO RN03/B | $10,300 | 1 |
| 439 | 400121764469 | 12176446 | 18KPYD11.72CRG | 52062/02 | $32,200 | 1 |
| 439 | 400121764476 | 12176447 | 18KWBSAPBR | 41518/22 | $18,600 | 1 |
| 439 | 400992418027 | 99241802 | BLACK ALLIGATOR 70/70 STR | 82.017070.C011 /L | $410 | 1 |
| 439 | 400992418058 | 99241805 | MATT BLK ALLIGATR 70/70 S | 82.017070.C012 /L | $410 | 1 |
| 439 | 400960520714 | 96052071 | PG EAR DIA 17.6CTS | C 19502/04 | $36,300 | 1 |
| 439 | 400960826281 | 96082628 | CALFSKIN LEATHER CORD | ALLEGRACORD-ANISE | $230 | 1 |
| 439 | 400960826922 | 96082692 | CALFSKIN LEATHER CORD | ALLEGRACORD-PURPLE | $230 | 1 |
| 439 | 400891317483 | 89131748 | 18KRG2CTBRDORGPKSAPPRING | 54002/39 | $15,000 | 1 |
| 439 | 400961049306 | 96104930 | WG D1.10CTW PENDANT | 95712/01 | $10,800 | 1 |
| 439 | 400961049658 | 96104965 | YWG D9.80CTW  EARRINGS | 12118/41 | $67,100 | 1 |
| 439 | 400892248717 | 89224871 | PINK GOLD/WHITE DIA LBRAC | 45711/04 | $3,800 | 1 |
| 439 | 400996862451 | 99686245 | BR PG 84 WHITE DIA 1.70CT | 44251/04 | $15,700 | 1 |
| 439 | 400895644080 | 89564408 | WG DIA BRAC .360 CT | 45809/01 | $19,400 | 1 |
| 439 | 400931633214 | 93163321 | 18K WG CERAMIC RING | 54001/46 | $10,800 | 1 |
| 439 | 400896620243 | 89662024 | CALFSKIN CORD WHITE | AP.4580X.CORDON.AC | $860 | 2 |
| 439 | 400896880975 | 89688097 | LEATHER CORD | AP.4571X.CORDON.AC | $230 | 1 |
| 439 | 400933091432 | 93309143 | 18KWG DIA EAR20.88CTS | 10208/10 | $98,600 | 1 |
| 439 | 400999764776 | 99976477 | CALFLEATHERCORDPARROT | AP.4580X.CORDON.AC-P | $430 | 1 |
| 439 | 400100952214 | 10095221 | RNG 72 WHT DIA 1.75CT | 54001/41 | $13,800 | 1 |

| 439 | 400934776222 | 93477622 | RSEGLD AMBER SAPP EAR | 12112/11 | $10,000 | 1 |
| 439 | 400101456971 | 10145697 | RG RING DIA 3.50CT | 50096/21 | $23,100 | 1 |
| 439 | 400935812660 | 93581266 | RSEGLD WHT DIA EAR18.3CTS | 11508/04 | $70,400 | 1 |
| 439 | 400901524597 | 90152459 | STAINLESS STEEL BLK WATCH | NEW RETRO N05 | $14,200 | 1 |
| 439 | 400102358311 | 10235831 | WD8.60CT PINK GOLD EARRING | 14092/04 | $56,000 | 1 |
| 439 | 400971948194 | 97194819 | 18KPG DIA 3.75CTS | 58801/04 | $30,200 | 1 |
| 439 | 400940473177 | 94047317 | 18KWG 4.50CT EAR | 14062/01 | $33,200 | 1 |
| 439 | 400996862420 | 99686242 | ER WG TRQ 132 EM 6.15CT | 18402/46 | ($35,900) | (1) |

**EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In re:

DE GRISOGONO U.S.A. INC.,

                Debtor.

Chapter 7

Case No.: 20-10389 (SMB)

------------------------------------------------------------------X

## DECLARATION OF VICTOR MONEYPENNY IN SUPPORT OF THE TRUSTEE'S MOTION FOR AUTHORITY TO SELL BY PRIVATE SALE TO SURYA CAPITAL LLC CERTAIN INVENTORY OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

**VICTOR MONEYPENNY** hereby declares, under penalty of perjury, as follows:

1.     I am a shareholder of MYC & Associates, Inc. ("**MYC**"), which maintains its corporate office at 1110 South Avenue, Suite 22, Staten Island, New York 10314.

2.     MYC is a full-service asset sale, remarketing and management firm whose principals have been engaged in the liquidation and sale of assets for many years and have extensive knowledge of the type of assets involved in this case. Pursuant to an Order of this Court entered on March 18, 2020 (the "**Retention Order**"), the Trustee was authorized to retain MYC as the Trustee's Special Liquidator and Custodian for the primary purpose of marketing and selling the Debtors' inventory of jewelry and timepieces.

3.     This Declaration is submitted in support of the motion of Deborah J. Piazza, as Chapter 7 Trustee (the "**Trustee**") of the bankruptcy estate of de GRISOGONO U.S.A. Inc. (the "**Debtor**"), for an order authorizing the Trustee to sell free and clear of all liens, claims, and encumbrances, certain inventory of the Debtor, comprised of various jewelry items and timepieces presently stored with Brinks Global Services, a Division of Brinks, Inc. (**"Brinks"**) and additional

such jewelry items and timepieces consigned to Saks Incorporated (collectively, the "**Assets**"), to Surya Capital LLC ("**Surya Capital**") for the purchase price of $480,000.00.

4.       From approximately March 2017 through the end of January 2020, the Debtor operated a retail jewelry store at 698-700 Madison Avenue, New York, New York (the "**Premises**").   In addition to selling merchandise to that store's customers, the Debtor also consigned various jewelry and timepiece items to department stores and other establishments engaged in the jewelry business.

5.       As one of his first actions in the performance of its duties as the Trustee's Special Liquidator and Custodian, and at the Trustee's direction, MYC arranged for the vacating of the Premises, the removal of the jewelry inventory located thereat, and the relocating of that inventory to Brinks at 580 Fifth Avenue, New York, New York 10036, for safeguarding.

6.       On March 19, 2020, this Court entered an Order which, authorized the Trustee, among other things, to operate the Debtor's business for a limited time and to have MYC market and sell the jewelry inventory stored at Brinks by a private sale or sales.  In furtherance of that Order, and at the Trustee's request, having photographed and itemized said inventory, MYC prepared a sale catalog that was distributed to a number of parties whom we deemed might be interested, including jewelry buyers that we had dealt with in previous cases.  In addition, MYC posted the itemized list and photos of the inventory on its webpage set up for this case, and sent an email to the approximate 3,500 subscribers to the MYC database, notifying said subscribers that the Assets were available for sale and directing them to said webpage.

7.       The Trustee contemplated that, pursuant to the March 19, 2020 Order, MYC would sell the Assets through a private sale or sales after affording all interested parties an opportunity to view in person the Assets stored at Brinks.  Unfortunately, the onset of the pandemic crisis, and

the consequent shutdown of non-essential and other normal business operations and the governmental imposition of stay-at-home orders, significantly inhibited MYC's ability to arrange for many such in-person inspections, and therefore substantially limited the number of parties prepared to make purchase offers.

8.      In light of the foregoing, and with the Trustee's consent, MYC proceeded to focus its marketing efforts on directly contacting various jewelry wholesalers who purchase the type of fine jewelry and timepiece items contained in the inventory. Pursuant to those efforts, MYC showed the inventory at Brinks in-person to five (5) separate parties, three (3) of whom submitted purchase offers. Two (2) of those three (3) offers were for a package comprised of the entirety of the Assets, both those stored at Brinks and those consigned to Saks Incorporated ("**Saks**"), and the other offer was solely for the inventory stored at Brinks. MYC then pitted each of those three (3) offerors against each other, conducting the practical equivalent of a bidding contest, which resulted in Surya Capital making the highest offer, $480,000.00, for a package consisting of both the 141 jewelry and timepiece items stored at Brinks, and approximately 55 items consigned by the Debtor to Saks.

9.      I respectfully submit that the Trustee's Sale Agreement reached with Surya Capital for the aforesaid sets of Assets at a purchase price of $480,000.00 represents an optimum price that the Trustee can obtain given the present circumstances, economic and otherwise. The value of these jewelry and timepiece items is only likely to decrease during said climate of indefinite duration. Thus, to put off the sale of these Assets "for another day" will likely only result in a decreased price for same, while the estate continues to incur monthly storage and insurance charges for the inventory stored at Brinks.

**WHEREFORE**, it is respectfully requested that this Court authorize the Trustee to consummate a sale of the aforesaid assets to Surya Capital for the purchase price of $480,000.00 in accordance with the terms of the Sale Agreement executed by them.

Dated:  Staten Island, New York
        June 17, 2020

_____
Victor Moneypenny, Shareholder

**EXHIBIT 3**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:

de GRISOGONO, U.S.A. INC.,

                                  **Debtor.**
-----------------------------------------------------------x

                         **Chapter 7**

                         **Case No. 20-10389 (SMB)**

### ORDER AUTHORIZING AND APPROVING THE TRUSTEE'S PRIVATE SALE TO SURYA CAPITAL LLC OF CERTAIN INVENTORY OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

Upon the motion dated June 18, 2020 (the "Sale Motion") of Deborah J. Piazza, the chapter 7 trustee (the "Trustee") of de Grisogono, U.S.A., Inc. ("Debtor"), pursuant to §§363(b), (f) and (m) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting entry of an order authorizing the Trustee to sell, free and clear of all liens, claims, and encumbrances ("Liens"), certain inventory of the Debtor, comprised of various jewelry items and timepieces (the "Assets"), to Surya Capital LLC ("Surya Capital") for the purchase price of $480,000.00, pursuant to the terms of that certain Asset Purchase Agreement  (the "Sale Agreement") attached to the Sale Motion as Exhibit 1, and for such other and further relief as the Court may deem just and proper; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b); and sufficient notice of the relief sought in the Sale Motion having been given; and no further notice being required; and after hearing argument in respect of the Sale Motion and upon the record of the hearing held before this Court on July 14, 2020 (the "Hearing"); and after due deliberation and sufficient cause appearing therefor; it is hereby

**ORDERED**, that the Sale Agreement is approved, and the Trustee is authorized to consummate the Sale Agreement and sell the Assets to Surya Capital free and clear of any and all Liens, if any, with any such Liens to attach to the proceeds of the sale; and it is further

**ORDERED** that Surya Capital shall take the Assets pursuant to the authority granted under this Sale Order and in accordance with the Sale Agreement "as is" and "where is" without any representations or warranties from the Trustee as to the Assets and without recourse; and it is further

**ORDERED**, that except as expressly permitted or otherwise specifically provided by this Sale Order, all persons and entities holding interests of any kind or nature whatsoever against or in the Debtor and/or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or in connection with, or in any way relating to, the Debtor and/or the Assets prior to the closing (the "Closing") of the sale of the Assets to Surya Capital, shall be forever barred, estopped, and permanently enjoined from asserting such interests against Surya Capital, its successors or assigns, its assets, and the Assets; and it is further

**ORDERED**, that Surya Capital shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Assets other than those agreed to pursuant to the Sale Agreement or this Sale Order; and it is further

**ORDERED**, upon entry of this Sale Order and the occurrence of the Closing, Surya Capital shall be entitled to the protection of Bankruptcy Code section 363(m) as a good faith purchaser; and it is further

**ORDERED**, subject to satisfaction of all of the terms and conditions of this Sale Order, the provisions of this Sale Order authorizing the sale of the Assets free and clear of all Liens,

shall be self-executing, and neither the Trustee nor Surya Capital shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order. However, the Trustee and Surya Capital, and each of their respective agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments as may be necessary or appropriate to implement and effectuate the terms of the Sale Agreement and this Sale Order; and it is further

**ORDERED** that the Trustee and/or her retained professionals are authorized to take whatever actions may be necessary or appropriate to implement and effectuate the sale of the Assets authorized by this Sale Order; and is further

**ORDERED** that notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry; and it is further

**ORDERED** that no further orders of this Court are necessary to effectuate the terms set forth herein for the transactions contemplated herein; and is further

**ORDERED**, that the Court shall retain jurisdiction to enforce the provisions of this Sale Order and the Sale Agreement and to resolve any disputes concerning this Sale Order, the distribution of the sale proceeds or the rights and duties of parties under this Sale Order or the Sale Agreement or any other issues relating to the Sale Agreement and this Sale Order.

Dated: New York, New York
_____, 2020

_____
**HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE**